## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **JOSHUA TIMOTHY MCCLAIN** | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO.** <u>6:22-CV-00272</u> |
| | § | |
| **DUSTIN DELGADO, DALLON** | § | |
| **MCKAY, AND TEXAS PARKS AND** | | |
| **WILDLIFE** | | |
| **Defendants.** | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

    **NOW COMES** Plaintiff, JOSHUA TIMOTHY MCCLAIN, by and through his attorneys

undersigned, and files this complaint for damages against the above named defendants, and allege

and state as follows:

### PARTIES

    1.    Plaintiff, JOSHUA TIMOTHY MCCLAIN, is an Individual and is a resident of

Limestone County, Texas.

    2.    Defendant, DUSTIN DELGADO, is an Individual who is a resident of Collin

County Texas, and was at all relevant times a Texas Game Warden.

    3.    Defendant, DALLON MCKAY, is an Individual who is a resident of Navarro

County, Texas, and was at all relevant times a Texas State Trooper.

    4.    Defendant TEXAS PARKS AND WILDLIFE is a political subdivision of the State

of Texas.

### JURISDICTION AND VENUE

    5.    This action arises under 42 U.S.C. §1983. This Court has subject matter jurisdiction

pursuant to 28 U.S.C.§§1331 AND 1343.  The acts and omissions giving rise to this claim occurred in Limestone County, Texas, which is in the Western District.  Pursuant to 28 U.S.C. §1391(b), venue is proper in this district.

## CONDITIONS PRECEDENT

6.     All conditions precedent have been performed or have occurred.

## FACTS

7.     Joshua Timothy McClain was in the process of having a house built on his land just south of Groesbeck in Limestone County, Texas.

8.     Joshua Timothy McClain, at the time of his arrest, worked for the Texas Department of Transportation at the Waco Division Office during the week.

9.     Joshua Timothy McClain is working towards obtaining his license to be a Registered Professional Land Surveyor for the State of Texas.

10.     Joshua Timothy McClain is an ordained minister of the Providence Primitive Baptist Church, husband, and father of two young children, age 4 and 2 at the time of the arrest and now expecting his third child.  As an upstanding citizen he has no prior arrests or criminal convictions prior to March 24, 2020.  Additionally, since this incident he has not been arrested.

11.     On or about 4:00 p.m. on March 24, 2020, Joshua Timothy McClain (hereinafter "McClain") was leaving his home which was under construction and was traveling to Mexia, Texas to borrow a lawnmower from one of the church Deacons when Texas Game Warden Dustin Delgado (hereinafter "Delgado") initiated a traffic stop in his clearly marked patrol vehicle utilizing his overhead lights on McClain for purportedly crossing the solid white line near the intersection of E. Yeagua Street and N. Highway 14 in Groesbeck, Texas and then again crossing the white line on State Highway 14 northbound.

12.    None of the alleged driving events were captured on video tape as Delgado was wearing a body worn camera and the State of Texas Game Warden vehicle did not have a dash camera recording system.

13.    Delgado stopped McClain and informed McClain he was stopped for failure to maintain a single lane. McClain did not believe he crossed the line but nonetheless explained that he was adjusting his radio in the vehicle. McClain was alone in his vehicle at the time. Delgado was riding solo in his vehicle. Delgado asked for McClain's drivers license and proof of insurance which McClain quickly produced without hesitation.   (See relevant portion of offense report below.)

I initiated a traffic stop on the black Ford F150 and contacted a male driver, who was later identified as Joshua Timothy McClain (DOB 03/01/85). I identified myself as a State Game Warden and informed McClain the reason for the traffic stop was for failure to maintain a single lane. I informed McClain that I observed him swerve his vehicle into the shoulder several times, then swerve his steering wheel back quickly. McClain replied, "Oh I'm sorry.I wasI wasmessing with my radio hereI'm sorry". I observed McClain to have bloodshot eyes. I asked McClain if he could produce a valid Texas Driver's License and proof of insurance for his vehicle. McClain was able to produce a valid Texas Driver's License. I asked McClain on the location he was heading to, and he told me he was headed to Mexia, Texas. McClain looked inside of his center console and was able to produce the insurance for his pickup. I asked McClain if there were any alcoholic beverages inside of his vehicle. McClain began to look around the front seat area and then informed me that there were not any alcoholic beverages inside of the vehicle. I asked McClain, "Have you had anything to drink today?". McClain replied, "Nope", then smiled. I asked McClain, "So, you were just messing with the radio?". McClain replied, "Yeah.yeah I'm sorry". I asked McClain if he was working on this day.

14.    Delgado's Affidavit submitted for probable cause determination, sworn to by Delgado is attached as **Exhibit #1**. The Affidavit states in part, "McClain advised he had not consumed any alcoholic beverages on this day." Delgado also swore that "McClain failed the Standardized Field Sobriety Testing (SFST's)," in spite of video evidence to the contrary and in spite of Delgado's own field sobriety testing scoring where McClain exhibited no clues on the One Leg Stand (OLS). An objective analysis of the Walk and Turn (WAT) test likewise showed no signs of intoxication. Delgado further claimed that he observed 6 out of 6 clues on the HGN test.

At approximately 4:21 P.M., I began conducting SFST's and began with the horizontal gaze nystagmus (HGN) test. While describing how I was about to conduct the test, I checked McClain for equal pupil size and resting nystagmus. McClain's pupils were equal size and he had no resting nystagmus. Once beginning the test, McClain exhibited equal tracking, but lacked smooth pursuit in both eyes. McClain exhibited a distinct and sustained nystagmus at maximum deviation in both eyes. McClain also exhibited an onset of nystagmus prior to my stimulus having reached 45 in both eyes. McClain had vertical nystagmus. In total, McClain exhibited 6 of 6 clues.

At approximately 4:25 P.M., I began the walk and turn (WAT) test by instructing McClain to imagine a straight line in front of him. I instructed McClain to place his left foot on the imaginary line, with his right foot in front of his left, and touching heel-to-toe. McClain placed his right foot on the imaginary line, with his left foot directly behind it touching heel-to-toe. I demonstrated and repeated instructions until McClain understood them. I instructed McClain when I tell him to begin, to take nine-heel to toe steps down the imaginary line, turn in a prescribed manner and take nine heel-to-toe steps back on the imaginary line. I instructed McClain to look at his feet, to count his steps out loud, and to keep his arms down by his side during the test. McClain took nine heal-to-toe steps, turned and took nine heal-to-toe steps back down the imaginary line. During this test, McClain stepped off the line, and missed heal to toe, as he was taking nine heel-to-toe steps back down the imaginary line. McClain completed the test with me having recorded 2 of 8 observable clues.

At approximately 4:28 P.M., I began the one leg stand (OLS) test. I instructed McClain to place his feet together, to keep his arms down at his sides, and to remain in that position until I told him to begin the test. I instructed McClain to choose either of his feet, to raise that foot approximately six inches from, and parallel to, the ground, and to count in the fashion of "one-thousand one, one-thousand two, one-thousand three", and so on until I instructed him to stop. I instructed McClain, while he performed the test, to count out loud, and keep an eye on his raised foot. I asked McClain if he understood the instructions of this test, and he replied, "Yes." I instructed McClain to begin. During the test, McClain did not keep his raised foot parallel to the ground as instructed. McClain completed the test with me having recorded 0 of 4 observable clues.

15.    Delgado further stated in his Original Narrative of his Incident Report that McClain was slurring his speech when the video and audio evidence from Delgado's body worn camera absolutely contradicts that assertion as well. Additionally, Delgado further completed a search of McClain's vehicle where no evidence of alcoholic beverages was located nor evidence of drug use. (See relevant portion of offense report below.)

I told McClain that he was under arrest for *Driving While Intoxicated*, and I placed him in handcuffs. I produced the Statutory Warning (DIC 24) and read, verbatim, to McClain. I asked McClain to consensually provide a sample of his blood. McClain consented to provide a sample of his blood. I conducted a consented search of McClain's vehicle, and did not find any alcoholic beverages or prescription medications. I told McClain that we were headed to Limestone Medical Center to get a specimen of his blood. McClain's vehicle was released to Classic Paint and Body Wrecker service by Texas DPS Trooper Dallon McKay.

16.   Delgado wrote that he observed McClain to be "relaxed" and squinting his eyes during the contact.  Delgado purposely left out of his report the fact that McClain was staring straight into the western sun during the stop.  McClain did not appear to be nervous or anxious or apprehensive nor had he made any furtive gestures, all typical indicators described in police reports detailing observations of law enforcement.  Here, McClain was "relaxed," or perhaps another word for "normal." (See relevant portion of video below.)



17.   In spite of there being no odor of alcohol, in spite of passing the SFSTs, and in spite of there being no other signs of intoxication, Delgado arrested Joshua Timothy McClain for Driving While Intoxicated.

18.   Delgado is captured on his own body worn camera attempting to contact a Texas Department of Public Safety Officer named Jason Didio by cell phone.  Delgado mutes his body camera so the conversation is not recorded.  It appears Delgado makes another call or perhaps sends a text message to an unidentified person and then appearing at the scene of the arrest is Texas Highway Patrol Officer Dallon McKay (hereinafter "McKay"). (See relevant portion of video

below.)



19.     McKay runs "Code" (red lights and siren) from the Texas DPS office located at 1221 E. Yeagua through the City of Groesbeck and turns North on State Highway 14 passing cars in town in no passing zones with emergency lights flashing and siren blaring despite the undisputed fact that McClain is already in custody and handcuffed before any contact is made between Delgado and McKay and despite the fact that there was no aggression on the part of McClain to warrant McKay running "hot" through town forcing cars to the shoulder of the road.  It is unknown what prompted McKay to act this way and it is unknown who directed him to this location running "Code" through town.

20.     As McKay approaches the scene where McClain is handcuffed and under arrest for DWI, Delgado makes a motion with his hand for McKay to kill his recorder.  Delgado kills the audio on his camera and at times puts his hand over the lens to prevent anyone from seeing or hearing what was being discussed. (See relevant portion of video below.)



21.    McKay removed his body worn camera from his body and places it on the dash of his DPS car while he and Delgado further their conversation.  After Delgado and McKay speak outside the presence of McClain, McKay returns to his car and places his body camera back on his uniform and approaches McClain to administer only the Horizontal Gaze Nystagmus test (HGN). (See relevant portion of video below.)





Dallon McKay_20200324_04_45_WFC1-030528_Agency Assist_91933698

22.     At the conclusion of his testing for HGN, McKay proclaims to McClain that he observed the same thing that Delgado observed, a statement that could only be attributed to Delgado telling McKay what he thought he observed while the cameras were muted.

23.     McKay did not complete a normal DPS police report.  Instead, McKay wrote a one paragraph signed statement that was not dated and had in the signatory block the Fairfield, Texas Highway Patrol Office address.  McKay wrote that Delgado was requesting assistance with a possible intoxicated motorist and that he administered the HGN test on McClain confirming Delgado's test results. (See relevant portion of offense report below.)

SUPPLEMENTAL CASE REPORT

On 03/24/2020, I Trooper Dallon McKay I was informed that Texas Parks and Wildlife Game Warden Delgado had stopped a possible intoxicated motorist on SH-14 just north of Groesbeck and was requesting assistance. Upon arriving on scene, I observed a subject, later identified as Joshua Timothy Mcclain, standing in front of Warden Delgado's vehicle. I spoke with Warden Delgado and he informed me that he had administered the standardized field sobriety tests and came to the conclusion that Mcclain was intoxicated. Warden Delgado asked me if I would administer the horizontal gaze nystagmus test to Mcclain again to confirm what he had already observed. I proceeded to administer the horizontal gaze nystagmus test. During this test the following clues were detected. Mcclain had equal pupil size and equal tracking in both eyes. Mcclain had lack of smooth pursuit in both eyes. Mcclain had distinct and sustained nystagmus in both eyes. Mcclain had onset of nystagmus prior to 45 degrees in both eyes. I informed Warden Delgado what I had observed. Warden Delgado transported Mcclain to the Limestone Medical Center for a blood draw. I stayed on scene and released Mcclain's vehicle to Classic Paint and Body.

Trooper III Dallon McKay

118 E Commerce #104

Fairfield, TX 75840

903-389-3237

24.     McClain's vehicle was searched and no signs of alcohol or drug use was found; no open containers of alcohol and no items to indicate drug or alcohol use or abuse.

25.     McKay stayed with McClain's vehicle until it was towed while Delgado took McClain to the Limestone Medical Center for a consensual blood draw.  McClain was never administered a Portable Breath Test (PBT) nor was he offered a breath test at the Limestone County Jail to test for alcohol. (See relevant portion of offense report below.)



TEXAS DEPARTMENT OF PUBLIC SAFETY
CRIME LABORATORY
**Instructions for the Collection and Submission of Blood
Specimens For Alcohol and/or Drug Determinations**
LAB-12b  Rev.06 (12/2016) p.1 Issued by: QAC

**OFFICER (Before Collection)**

1. Complete the Subject Consent Form and ensure that both subject and witnesses sign the form where indicated.
2. Complete information requested on the Toxicology/Blood Alcohol Kit Laboratory Submission Form and the Blood Tube Seal(s).
3. The blood specimen(s) **must** be drawn by a qualified professional (e.g. a physician, qualified technician, registered professional nurse, licensed vocational nurse, licensed or certified emergency medical technician) as described in the Texas Transportation Code §724.017. The blood collection should be observed.
4. Note: The second blood tube is a precautionary measure to provide an additional sample for testing.

**BLOOD COLLECTOR**

1. Cleanse blood withdrawal site only with a non-alcoholic prep pad.
2. With hospital/clinic procedures, collect a full tube(s) of blood specimen from the subject in each provided blood tube or other gray top 10 mL Vacutainer®. In a 2 tube kit, both tubes should be collected at the same time.
3. Immediately after blood collection, slowly mix the anticoagulant powder and blood by inverting the blood tube(s) several times.
4. Transfer blood tube(s) directly to officer and ensure that your name and title are on the seal(s) and submission form.

**OFFICER (After Collection)**

1. Immediately upon receipt of the filled blood collection tube(s), verify the information on the Blood Tube Seal(s), remove the backing from the seal for that subject, affix the circle on the seal to the rubber stopper, and press the ends of the seal down the sides of the blood tube(s).
2. In order to comply with US Postal regulations, insert each blood collection tube(s) into an absorbent pouch. Then place the pouch into a plastic container and close the lid.
3. Place the plastic container(s) in the foam holder inside the box and close the lid. Seal the box with the INTEGRITY SEAL where indicated and initial and date the seal.
4. Check the Kit Laboratory Submission Form for completeness, refold, insert into the plastic pouch which is affixed to the outside of the box, and seal. If appropriate, include the lab copy of the DIC-23A in with the submission form.
5. The sealed kit may be either mailed or hand-delivered to the appropriate laboratory.
6. If submission is delayed, it is recommended to refrigerate the specimen until sent to the lab.
7. Affix self-adhesive mailing label to the box. If mailed to the laboratory, completely fill out the label (see listing of DPS labs on the back of the instruction sheet. It is VERY important that your name and phone number are included in the return address. Postage will be necessary if the kit is mailed to the laboratory.
8. For ALR cases, submit DIC-23A and case documents to:
   Enforcement and Compliance Service, PO Box 4040, Austin, TX 78765

**SUBJECT'S CONSENT FORM**

THE STATE OF TEXAS VS. _Joshua  Timothy  McClain_
(subject name)

Be it remembered that on this day of _March 24th_, 20 _20_, I _Joshua Timothy McClain_
(subject name)

having been placed under arrest on a charge of driving a motor vehicle on a public highway while intoxicated,

do voluntarily give a specimen of my blood to _Texas  Game  Warden  Dustin  Delgado_
(arresting officer).

Signature of Subject: _Joshua J McClain_

Subject Address: _1159 LCR 770_
_Groesbeck, TX 76642_

Witness of the Collection: _Kenneth Welker_
Print Name and Signature

**Retain for your File.  Do not send to laboratory.**            TXDPS940D-SNB-1.2 2/17

26.     When McClain was arrested for Driving While Intoxicated, he made one request of

Delgado.  McClain told Delgado that once the blood lab results came back negative for any alcohol

or drugs, that McClain wanted Delgado to call and apologize to him for possibly costing him his job, his reputation, and his standing in the community and church where he preached and the embarrassment to his wife and children.

27.     The laboratory results below are attached hereto as **Exhibit #2** and incorporated herein for all purposes, came back negative for drugs and no testing for alcohol was requested in spite of McKay and Delgado's suspicions captured on audio inside McKay's patrol car that McClain may have consumed alcohol that did not emit an odor.  (See relevant portion of offense report below.)

**Evidence Description, Results of Analysis and Interpretation:**

**01 : DPS Blood Kit**

  **01-01 : Blood in gray top tubes (2) labeled "Joshua McClain"**

**Immunoassay Screening:**

| Drug Category: | Result: |
|---|---|
| Amphetamines | Negative |
| Barbiturates | Negative |
| Benzodiazepines | Negative |
| Cannabinoids | Negative |
| Carisoprodol | Negative |
| Cocaine Metabolite | Negative |
| Opiates | Negative |
| Oxycodone | Negative |
| Phencyclidine | Negative |
| Zolpidem | Negative |

**RECEIVED**

**JAN 19 2021**

Limestone Co. Attorney

  Further analysis has been performed due to submitted case information.

**Confirmation:**

| Drug(s): | Result: | Method: |
|---|---|---|
| No drug detected | | LCMS |

An approved deviation to a testing procedure was used in this case.

ACCREDITED AS AN ANAB FORENSIC TESTING LABORATORY TO ISO/IEC 17025:2017
COURTESY · SERVICE · PROTECTION

DPS 11.22.2020

Page 1 of 2

28.     The case was rejected for prosecution for insufficient evidence, as were other cases of DWI Delgado that had been filed in Limestone County.  See **Exhibit #3**.

29.     Delgado never contacted McClain as requested to apologize for falsely arresting and accusing him of Driving While Intoxicated.

30.    Two other such cases that counsel is aware of involve a licensed engineer identified by pseudonym S.T.M, whose case was rejected by the Limestone County District Attorney for Insufficient evidence to prosecute after he was arrested under almost identical circumstances.

31.    S.T.M. was in charge of inspecting the construction of a wind farm in the Prairie Hill area of Limestone County, Texas when he was observed by Delgado driving slowly and "veering" over to the side of the road, committing no traffic violations and certainly exhibiting no signs of intoxication.  In fact, S.T.M. was on the phone with his fiance and thus the reason he was stopped in his vehicle in a rural area.  S.T.M. was on the blue tooth speaker phone in his vehicle when Delgado pulled behind him in his State Owned Game Warden vehicle and commanded S.T.M. to exit his vehicle.  S.T.M. rolled his window up and was telling his fiance that someone was behind him yelling at him so he had to go.  After hanging up the phone, S.T.M. rolled his window down, placed his hands out the window and complied with all Delgado's commands.

32.    S.T.M. had nothing to drink, as in fact he and his religion don't allow the consumption of alcohol, much less the fact that S.T.M. was operating a company owned vehicle and was performing his job of inspecting the installation sites for damage to the landscape.

33.    Delgado wrote in his report that he made consensual contact with the driver later identified as S.T.M.  Delgado wrote S.T.M. appeared confused and had bloodshot eyes.  Delgado wrote in his report that after having S.T.M. exit his vehicle he immediately handcuffed him despite having observed no reason to do so.  Delgado conducted a consensual search of the vehicle. Delgado further wrote in his probable cause affidavit that S.T.M. failed SFST tasks and he was taken to Limestone Medical Center for a consensual blood draw and then later to the Limestone County Jail and booked for DWI in spite of the video evidence to the contrary regarding failing the SFST's.

34.     After Delgado found no alcohol, did not smell the odor of alcohol, nor found any illegal substances in S.T.M.'s vehicle, he called the Groesbeck Police K-9 to the scene where the dog "alerted" to a stick of summer sausage in the driver side door panel of the vehicle.

35.     Delgado came to the same conclusion about S.T.M. as he did McClain and others, that is, that all exhibited 6 of 6 clues on the HGN.  Delgado wrote that S.T.M. completed the Walk and Turn (WAT) test and Delgado recorded 1 out of 8 observable clues.  Delgado then conducted the One Leg Stand (OLS) and wrote that he observed 0 out of 4 clues.  He immediately placed Thompson under arrest for DWI in spite of successfully completing all SFST's, a consistent pattern with Delgado for building up his arrests for DWI and BWI so he can be recognized as a leader in his Agency and further his aspirations for being filmed by Lone Star Law, a television program ride-a-long film crew detailing the day to day calls of Texas Game Wardens.  In fact, it appears that Delgado has been featured both in Limestone County and Collin County while representing the Texas Game Wardens on the show.

36.     Delgado submitted S.T.M.'s blood to the DPS lab for analysis on November 12, 2019 and the blood was analyzed on December 12, 2019 and December 13, 2019.  The analysis came back negative for alcohol and negative for 10 different types of controlled substances.

37.     Delgado purposely withheld the evidence of no intoxication from the Limestone County Attorney until it was finally received on May 11, 2020 where the case was formally rejected for insufficient evidence on May 13, 2020.

38.     Another arrest by Delgado involved the arrest of Bobby Barlow, a former Limestone County Deputy Sheriff on May 26, 2020.  This arrest for Boating While Intoxicated was also rejected for prosecution by the Limestone County Attorney due to insufficient evidence.

39.    Bobby Barlow is a former Limestone County Deputy Sheriff who is familiar with the laws of the State of Texas, particularly relating to DWI, SFST's and investigations of intoxicated persons.

40.    Bobby Barlow was jugging for catfish on Lake Limestone when another fisherman set his lines in the path of where Barlow was already fishing, thereby running the risk of the lines getting tangled. When Barlow confronted the other fisherman, words were exchanged and the authorities were called to the scene by the other fisherman claiming Barlow was cutting his lines, a false statement on its face.

41.    Delgado ran the call from the Mart, Texas area of McLennan County and upon confronting Barlow performed a "water safety inspection" on Barlow's fishing boat. After locating four empty ring spaces from a six pack of beer, the water safety inspection and disturbance on the water turned once again into a Boating While Intoxicated arrest. One of the beers was in a drink holder, the other three Barlow told Delgado had been consumed at lunchtime over six hours before the encounter.

42.    Barlow told Delgado that he had recent back surgery and could not perform SFST's other than the HGN which Barlow was familiar with from his days of administering the test on suspected intoxicated persons himself.

43.    Once again as had become Delgado's pattern and practice, he determined that Barlow displayed clues on the HGN, totaling 4 clues with no vertical nystagmus. Delgado proceeded to demand Barlow attempt the Walk and Turn (WAT) test even though according to published National Highway Transportation and Safety Act guidelines, Barlow was not a suitable candidate. Barlow could not complete the test because of his recent back surgery and Delgado indicated in his report that he stopped the SFST's for the safety of Barlow. He then placed Barlow

under arrest for Boating While Intoxicated (BWI). Delgado wrote in his probable cause affidavit submitted to the court that Barlow was administered standardized field sobriety testing and failed them, even though Delgado only performed the HGN standardized testing and not the OLS or the WAT.

44.    In Barlow's case, Delgado wrote in his report that he smelled the strong odor of alcohol, yet Delgado did not request testing for alcohol after Barlow consented to a blood draw. Instead, Delgado followed his usual practice of having the lab test for drugs, the result of which came back "None Detected" for all substances tested except Hydrocodone, for which Barlow had a prescription because of the back surgeries, at a rate of 0.01 milligrams per liter, much less than dosage unit of the prescription.

45.    Barlow's case was declined for prosecution as was S.T.M.'s and McClain's just to name three known cases at this time.

## CAUSES OF ACTION FOR VIOLATIONS OF THE FOURTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION BROUGHT PURSUANT TO 42 U.S.C. §1983

46.    Plaintiff realleges paragraphs 1-45, and asserts the Defendants deprived Plaintiff of his Constitutional rights under color of state law as proscribed by 42 U.S.C. §1983.

47.    The individual Defendants, as officers, and as employees of Texas Parks and Wildlife and Texas Department of Public Safety, were acting pursuant to their authority and under color of state law when they committed the above acts against the Plaintiff.

48.    The individual Defendants' actions described above constitute an unreasonable search and seizure, abuse of power, malicious criminal prosecution, false imprisonment, negligent hiring, training, and supervision of its officers, and civil conspiracy to commit the foregoing acts,

and deprived Plaintiff of his federal Constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution.

49.     Defendant Texas Parks and Wildlife is a political subdivision of the State of Texas and is therefore a person for purposes of 42 U.S.C.§1983. Defendant Texas Parks and Wildlife is liable for the above deprivations as it is the custom and policy of Texas Parks and Wildlife that led to the Constitutional deprivations cited above.

50.     Furthermore, Defendant Texas Parks and Wildlife has a custom and policy to review cases of its officers and turn a blind eye when the officer makes a false arrest without probable cause, or when their officers tamper with and/or fabricate evidence against those persons arrested, and prosecute the accused in accordance with this custom and policy.

51.     In the instant case, supervisor Michael Hanson reviewed Delgado's cases and his performance and noted in his review that Delgado was a leader in DWI/BWI arrests in his region if not the entire district. (See relevant portion of Delgado Personnel File below).

**Competency 3: Service Focus**

Description :

Focuses efforts on serving internal and external customers (e.g., visitors, landowners, constituents, stakeholders) in a way that satisfies customer needs, exceeds customer expectations, and aligns with the TPWD mission and program/division goals.

| | |
|---|---|
| Manager Rating: | Exceeds Expectations |
| Avg Rating: | Exceeds Expectations    3.00 |

Manager Comments:    Dustin is a hard worker and a district leader in regards to documented enforcement action. He is a definite district, if not regional, leader in the area of DWI/BWI enforcement as well. Dustin recently observed blood in the bed of a pickup, while off duty. He began an investigation that involved other area wardens. The investigation soon resulted in the investigation reaching the Texas Panhandle, involving more wardens as well as other agencies, including military authorities. This investigation resulted in multiple charges against multiple violators. The beginnings of this case are indicative of Dustin's ability to make necessary evaluations of evidence concerning wildlife violations and take appropriate action and follow through to bring those violators to justice.

| | | | |
|---|---|---|---|
| Created By : | Template | 10/21/2020  2:11PM | |
| Last Modified By : | Michael Hanson | 10/27/2020  1:00PM | |

52.     It is apparent from his conduct in this against McClain and the others cited that

Delgado likes to arrest people for DWI/BWI and will go to any length including fabricating

evidence in order to improve his personnel file so that he can participate in and become a TV star

which is also referenced in his performance review by his supervisor.  (See relevant portion of

Delgado Personnel File below).

**Avg Rating:** Exceeds Expectations          3.00

**Manager Comments:** Dustin exceeds expectations regarding communication. With him being in the furthest county from the district office.....timely, effective communication becomes even more important. Dustin asks questions when necessary and is quick to inform supervision of instances of potential future concern. Dustin's communication with his partner exceeds expectations as well and they seem to be sharing a productive working relationship. Dustin is very involved in providing education and information to the public through numerous programs to civic groups, schools, etc. throughout Limestone County. Dustin frequently reaches out to local media outlets in an effort to partner with them to get necessary information out to the public. Dustin and his partner have also recently been working with Lone Star Law to film segments for upcoming episodes.

Created By :   Template                    10/21/2020  2:11PM

Last Modified By :   Michael Hanson            10/27/2020  9:46AM

### FALSE IMPRISONMENT

53.     Plaintiff realleges paragraphs 1-45 and 50-52 and asserts that the individual

Defendants willfully seized and arrested Plaintiff without consent and without authority of law

without a search or arrest warrant or probable cause thereby causing the Plaintiff to be falsely

imprisoned.

54.     This false imprisonment resulted in damages to Plaintiff, which include, inter alia,

severe emotional distress, mental anguish, humiliation, embarrassment, nervousness, anxiety,

apprehension and fright, loss of wages, medical expenses, and physical pain and suffering, attorney

fees, towing fees, and bail bond fees. All such damages are the proximate cause of the actions of the individual Defendants listed above in falsely imprisoning Plaintiff.

## MALICIOUS CRIMINAL PROSECUTION

55.    Plaintiff realleges paragraphs 1-45 and 50-52 and asserts that Defendants actions as described therein constitute the tort of Malicious Criminal Prosecution, and Plaintiff hereby sues Defendants for Malicious Criminal Prosecution. The criminal prosecution of Plaintiff was initiated or procured by the Defendants, the prosecution was terminated in the Plaintiff's favor by a dismissal of the criminal charges, the Plaintiff was actually innocent of the charges that Defendants had filed against Plaintiff, the Defendants did not have probable cause to imitate or procure the prosecution, the Defendants acted with malice, and Plaintiff suffered damages as the result of the prosecution. Said tort resulted in damages to Plaintiff which included inter alia, severe emotional distress, mental anguish, humiliation, embarrassment, nervousness, anxiety, apprehension and fright, loss of wages, medical expenses, and physical pain and suffering, attorney fees, towing fees, and bail bond fees. All such damages are the proximate cause of the actions of the individual Defendants listed above in maliciously procuring the criminal prosecution against Plaintiff.

## CIVIL CONSPIRACY

56.    Plaintiff realleges paragraphs 1-45 and 50-52 and asserts that Defendants actions as described therein constitute a Civil Conspiracy, and Plaintiff hereby sues Defendants for Civil Conspiracy. The Defendants were members of a combination of two or more persons, the object of the combination being to accomplish an unlawful purpose, or in the alternative, a lawful purpose by unlawful means. The members of the combination had a meeting of the minds on the object or course of action. One or more of the members committed an unlawful, overt act to further the

object or course of action, and said wrongful acts resulted in damages to Plaintiff which include, inter alia, severe emotional distress, mental anguish, humiliation, embarrassment, nervousness, anxiety, apprehension and fright, loss of wages, medical expenses, and physical pain and suffering, attorney fees, towing fees, and bail bond fees. All such damages are the proximate cause of the actions of the individual Defendants listed above in conspiring against Plaintiff.

## JURY DEMAND

Plaintiff herby demands a trial by jury under F.R.C.P. 38.

## PRAYER FOR RELIEF

**WHEREFORE,** having fully set forth a complaint for damages above, Plaintiff prays for the following relief:

1. An Order for additional training in the areas of civil rights violations, probable cause determination, and DWI/BWI investigation;

2. Judgment against Defendants for all general and compensatory damages proximately caused by their wrongdoing;

3. Plaintiff also seeks unspecified punitive damages under Texas tort law, as well as under 42 U.S.C. §1983 for gross violations of Plaintiff's civil rights;

4. An award of reasonable and necessary attorneys' fees and costs;

5. A jury trial

6. Such other relief as this Court deems just and proper.

Respectfully submitted,

By: _____

David E. Moore
Texas Bar No. 24034587
Email: davidmoorelaw@gmail.com
P.O. Box 66
204 S. Dr. J.B. Riggs Drive
Groesbeck, Texas 76642
Tel. (254) 254-729-5666
Fax. (254) 254-729-8266
Attorney for Plaintiff
JOSHUA TIMOTHY MCCLAIN

THE LAW OFFICE OF CHAD MORGAN, P.C.

By: _____

CHAD MORGAN
Texas Bar No. 24046475
Email: chad@lawofficeofchadmorgan.com
109 S. MOUNT STREET
FAIRFIELD, TEXAS 75840
Tel. (903) 389-3244
Fax. (888) 316-0565
Attorney for Plaintiff
JOSHUA TIMOTHY MCCLAIN

# EXHIBIT 1

THE STATE OF TEXAS
COUNTY OF LIMESTONE

BOOK IN NUMBER:_____
ACCUSED: Joshua Timothy McClain
DATE BOOKED IN: 03/24/2020
TIME OF ARREST: 4:45 P.M.
(*above must be completed by arresting officer)

## AFFIDAVIT
### SUBMITTED FOR PROBABLE CAUSE DETERMINATION

Before me, the undersigned authority, on this day personally appeared **Texas Game Warden Dustin Delgado** (Affiant), whose signature appears below, a peace officer in and for the State of Texas, who after being duly sworn upon oath deposes and says that he / she has good reason to believe and does believe that **Joshua Timothy McClain** (Accused) did on or about the 24th day of **March, 2020,** commit the offense of Driving While Intoxicated, which offense is charged to be classified as a ☒ Misdemeanor [ A B C ]☐ Felony [ 1  2  3  S ] against the peace and dignity of the State of Texas.

The good reason and belief of the affiant officer for this affidavit is based upon the following facts and circumstances (provide narrative below and on attached sheets or attaching the case/offense report copy as needed):

I, Texas Game Warden Dustin Delgado was patrolling E. Yeagua Street, when I observed a black Ford F150 pickup began to  quickly jerk its position to the right while operating on the roadway before stopping at the traffic light on E. Yeagua and N. Highway 14 (Ellis). The black Ford F150 pickup turn North on Highway 14 (Ellis) and proceeded towards Groesbeck High School. I observed the black Ford F150 pickup to cross the solid white line (Shoulder) several times. I initiated a traffic stop on the black Ford 150 pickup and contacted a male driver who was identified at Joshua Timothy McClain. McClain appeared to have bloodshot eyes, and appeared to be "relaxed" during my contact with him. I told McClain that I wanted to make sure he was okay to safely operate his motor vehicle. McClain advised that he had not consumed any alcoholic beverages on this day. McClain advised that he does normally take anti-depressant medication on a daily basis. McClain consented to participating in Standardized Field Sobriety Testing (SFST's). McClain failed the Standardized Field Sobriety Testing (SFST's). McClain consented to providing a specimen of his blood. I placed McClain under arrest for Driving While Intoxicated (Class B Misdemeanor). McClain was transported to Limestone Medical Center for blood draw for his consented specimen. McClain was transported to the Limestone County Jail for booking.

Witness my signature this the 24th day of March`         , 2020.

_____
AFFIANT

Texas Parks and Wildlife Department
AGENCY

Printed name:

Dustn Delgado

MARK ALAN MINCHEW
Notary Public, State of Texas
My Commission Expires
May 14, 2023
NOTARY ID 12601893-1

# EXHIBIT 2



# TEXAS DEPARTMENT OF PUBLIC SAFETY

CRIME LABORATORY
5800 Guadalupe
Austin, TX 78752
Voice 512-424-2105  Fax 512-424-2869



**STEVEN C. McCRAW**
DIRECTOR
**FREEMAN F. MARTIN**
**RANDALL B. PRINCE**
**JEOFF WILLIAMS**
DEPUTY DIRECTORS

COMMISSION
STEVEN P. MACH, CHAIRMAN
STEVE H. STODGHILL
NELDA L. BLAIR
DALE WAINWRIGHT

## Laboratory Case Number: WAC-2004-02444

### Toxicology (Drugs) Laboratory Report

Issue Date:  January 16, 2021

Dustin Delgado
Texas Parks and Wildlife Department
1221 East Yeagua St
Groesbeck, TX 76642

**Agency Case Information:**     Texas Parks and Wildlife Department - 19R3D18336799

**Offense Information:**     3/24/2020 - Limestone County

**Subject(s):**     MCCLAIN, JOSHUA TIMOTHY (DOB 03/01/1985) TX DL 37632778

**Submission Information:**

**01** - DPS Blood Kit on April 10, 2020  VIA Certified Mail 70191640000087174140

**Requested Analysis:** Analyze for drug content.

**Evidence Description, Results of Analysis and Interpretation:**

**01 : DPS Blood Kit**

**01-01 : Blood in gray top tubes (2) labeled "Joshua McClain"**

**Immunoassay Screening:**

| Drug Category: | Result: |
|---|---|
| Amphetamines | Negative |
| Barbiturates | Negative |
| Benzodiazepines | Negative |
| Cannabinoids | Negative |
| Carisoprodol | Negative |
| Cocaine Metabolite | Negative |
| Opiates | Negative |
| Oxycodone | Negative |
| Phencyclidine | Negative |
| Zolpidem | Negative |

RECEIVED

JAN 19 2021

Limestone Co. Attorney

Further analysis has been performed due to submitted case information.

**Confirmation:**

| Drug(s): | Result: | Method: |
|---|---|---|
| No drug detected | | LCMS |

An approved deviation to a testing procedure was used in this case.

ACCREDITED AS AN ANAB FORENSIC TESTING LABORATORY TO ISO/IEC 17025:2017
COURTESY · SERVICE · PROTECTION

TxDPS 12.22.2020

WAC-2004-02444                Toxicology (Drugs) Laboratory Report                January 16, 2021

This report has been electronically prepared and approved by:

    Dana Baxter

    Forensic Scientist

    Texas DPS Austin Crime Laboratory

This report has been issued via email to:

    Dustin Delgado (dustin.delgado@tpwd.texas.gov)

*The results in this report relate only to the items tested or sampled as listed in the body of this report.*

*A test report may not be reproduced by the customer except in full. This report contains conclusions, opinions, and interpretations based on and supported by data obtained from using appropriate and validated scientific methods and procedures. The laboratory's current methods and procedures are available online at http://www.dps.texas.gov/CrimeLaboratory/Pubs.htm. A list of Quality Incidents involving the laboratory is available online at http://www.dps.texas.gov/CrimeLaboratory/qualIncidents.htm.*

*Evidence Disposition: All evidence submitted by non-DPS entities is returned to the submitting agency. The Laboratory retains internal DPS customer evidence until authority to destroy, transfer, return, or forward the evidence is received. If evidence requires additional analysis, the laboratory will communicate this to the customer.*

*In addition to this report, the lab maintains a complete case record which may be discoverable under Article 39.14 of the Texas Code of Criminal Procedure.*



**TEXAS DEPARTMENT OF PUBLIC SAFETY**
**CRIME LABORATORY**

**Disclosure Form**
LAB-302 Rev.00e (09/2019) p.1 Issued by: SQM

WAG-2004-02444
Page 1 of 1
TxDPS 01.21.2020

The information included on this document is required by Texas DPS Crime Laboratory Service policy published online at http://www.dps.texas.gov/CrimeLaboratory/Pubs.htm, specifically in the Crime Laboratory Service Manual. The information disclosed is provided in accordance with Brady, Giglio, and Michael Morton Act and is intended for prosecutor evaluation.

Any events requiring disclosure for the indicated employee are listed below. If there are no disclosure-required events, this will be indicated by listing "None".

**Name:  Baxter, Dana**
**Title:   Forensic Scientist**

<u>Last Update</u>
12/15/2020   3:27:35PM

**Date:**

  **Disclosure Event:** None

  **Tracking Number:**

  **Description of Incident:**

  **Reviewed by Valadez, Melissa on 12/07/2018**

This document contains sensitive data and its distribution should be limited to those who require it in the performance of their duties.
It was generated on January 16, 2021 at  1:05 pm.



**TEXAS DEPARTMENT OF PUBLIC SAFETY**
**CRIME LABORATORY**
**Statement of Qualifications**
LAB-301 Rev.00s (09/2019)  Issued by: SQM

WAC-2004-02444
Page 1 of 5
TxDPS 09.04.2020

**Name: Baxter, Dana**
**Title:  Forensic Scientist**

<u>Last Update</u>
December 15, 2020

## Disciplines

Indicate all disciplines and categories in which testing is performed. If trained, but not currently testing, then indicate Trained.

| | | |
|---|---|---|
| Toxicology | Post-Mortem Forensic Toxicology | Testing |
| Toxicology | Toxicology | Testing |

## Education

List all higher academic institutions attended. List high school only if no college hours have been earned.

<u>Dates Attended</u>  <u>- Institution</u>  <u>- Major and Degree</u>

| | |
|---|---|
| Aug 1989 to May 1992 | University of Missouri - Chemistry - None |
| Aug 1992 to Dec 1993 | Park College - Chemistry - Bachelor of Arts |
| Jan 1994 to Jul 1996 | University of Kansas - Pharmaceutical Chemistry - Master of Science |

## Courtroom Experience

List all the categories in which testimony as an expert witness has been presented and indicate over what period of time and how many times testified in each category and period.

| <u>Subject of Testimony (number of times)</u> | <u>Time Period</u> |
|---|---|
| Drug Toxicology: Benzodiazepines(30x) | Since 2015 |
| Drug Toxicology: Carisoprodol/Meprobamate(4x) | Since 2015 |
| Drug Toxicology: Cocaine and Metabolites(12x) | Since 2016 |
| Drug Toxicology: Narcotic Analgesics(15x) | Since 2015 |
| Drug Toxicology: Phencyclidine(8x) | Since 2014 |
| Drug Toxicology: THC and Metabolites(4x) | Since 2017 |
| Drug Toxicology: Venlafaxine(1x) | Since 2018 |
| Drug Toxicology: Zolpidem(4x) | Since 2017 |

## Forensic Certifications and Licenses

List Forensic Licenses and Certifications held, the issuing body, and the effective dates.

| <u>Certificate or License</u> | <u>Issued by</u> | <u>Effective Dates</u> |
|---|---|---|
| Forensic Analyst License in Toxicology (Interpretive) | Texas Forensic Science Commission | Dec 2018 to Dec 2022 |

## Professional Affiliations

List professional organizations affiliated with. Indicate any offices or other positions held and the time period of the activity.

Southwestern Association of Toxicologists (Since 2014)

Society of Forensic Toxicologists (Since 2016)

## Employment History

List all employment for scientific or technical positions held, particularly those related to forensic science.



TEXAS DEPARTMENT OF PUBLIC SAFETY
CRIME LABORATORY
**Statement of Qualifications**
LAB-301 Rev.00a (09/2018) Issued by: SQM

WAC-2004-02444
Page 2 of 5
TxDPS 09.04.2020

**Name: Baxter, Dana**

**Title:  Forensic Scientist**

<u>Last Update</u>
December 15, 2020

## Employment History

List all employment for scientific or technical positions held, particularly those related to forensic science.

**Employer: Texas Dept. of Public Safety** (Sep 2017 to Present)

**Title:**   Forensic Scientist III

**Duties:**  Analyze biological specimens for the presence or absence of drugs using Enzyme Multiplied Immunoassay Technique and LC/MS target and screen analyses.  Interpret analytical results, establish and maintain records pertaining to casework and court testimony, and compose technical reports.  Serve as a custodian of the business records and testify in court as necessary.  Perform routine maintenance of analytical instruments and keep records for each instrument.  Assist in validation of new laboratory methods.  Study current material in scientific journals regarding new advances and techniques in forensic toxicology.

**Employer: Texas Dept. of Public Safety** (Sep 2014 to Sep 2017)

**Title:**   Forensic Scientist II

**Duties:**  Analyze biological specimens for the presence or absence of drugs using Enzyme Multiplied Immunoassay Technique and LC/MS target and screen analyses.  Interpret analytical results, establish and maintain records pertaining to casework and court testimony, and compose technical reports.  Perform routine maintenance of analytical instruments and keep records for each instrument.  Testify in court as necessary.  Study current material in scientific journals regarding new advances and techniques in forensic toxicology.  Serve as a custodian of the business records.

**Employer: Texas Dept. of Public Safety** (Sep 2013 to Sep 2014)

**Title:**   Forensic Scientist I

**Duties:**  Analyze biological specimens for the presence or absence of drugs using Enzyme Multiplied Immunoassay Technique and LC/MS target analyses.  Interpret analytical results, establish and maintain records pertaining to casework and court testimony, and compose technical reports.  Perform routine maintenance of analytical instruments and keep records for each instrument.  Testify in court as necessary.  Study current material in scientific journals regarding new advances and techniques in forensic toxicology.  Serve as a custodian of the business records.

**Employer: Kansas Dept. of Health & Environment** (Feb 2010 to May 2013)

**Title:**   Chemist III

**Duties:**  Affiliated with the LRN (Laboratory Response Network) as a Level 2 Laboratory in conjunction with the CDC (Center for Disease Control and Prevention) for chemical terrorism.  Analyze biological specimens using ICP/MS, GC/MS, LC/MS/MS.  Perform proficiency tests on all nine methods three times each year.  Analyze patient blood samples for lead, cadmium, and mercury.  Perform basic instrument maintenance and trouble shoot problems.  Maintain instrument logs, report patient results, update SOPs.  Maintain emergency response supplies.  Participate in Emergency Preparedness training as part of the Incident Command System. Train new employees.

**Employer: Kansas Dept. of Health & Environment** (Feb 2008 to Jan 2010)

**Title:**   Chemist II

**Duties:**  Extraction, analysis and reporting of ambient water for pesticide residues utilizing GC instrument.  Make calibration standards and test new lots of solvents used in analysis.  Perform routine maintenance on GC and keep instrument logs up to date.  Help train new employees.



TEXAS DEPARTMENT OF PUBLIC SAFETY
CRIME LABORATORY
**Statement of Qualifications**
LAB-301 Rev.00a (09/2019) Issued by: SQM

WAC-2004-02444
Page 3 of 5
TxDPS 09.04.2020

**Name: Baxter, Dana**
**Title:   Forensic Scientist**

<u>Last Update</u>
December 15, 2020

## Employment History
List all employment for scientific or technical positions held, particularly those related to forensic science.

**Employer: Bishop Seabury Academy** (Aug 2005 to May 2007)

**Title:**   Science Teacher

**Duties:**  Design lectures, lessons, and exams for chemistry (7, 10, 12 grades) and earth science (7, 8 grades).  Communicate with parents, act as advisor to a small group of students, and be active in the life of the school.

**Employer: Boehringer Ingelheim** (Sep 1997 to Mar 1999)

**Title:**   Assistant Chemist/Scientist II

**Duties:**  Validation of cleaning procedures for pharmaceutical production and peer review of other's work. Testing of finished products, stability testing, and analysis of customer medicated feed mixes utilizing HPLC instrumentation.  Perform documentation according to GMP (Good Manufacturing Practices).

## Other Qualifications
List all personal certifications, all scientific publications and/or presentations authored or co-authored, research involved with, academic or other teaching positions held, and any other information relevant to qualifications.

| | |
|---|---|
| Other | "Training on Evidence Submission, Blood Alcohol and Toxicology" DPS Training Academy, presenter (04/19/2016, 11/09/2016) |
| Other | "Training on Evidence Submission, Blood Alcohol and Toxicology" DPS Training Academy, presenter (03/15/2017) |
| Other | "Training on Evidence Submission, Blood Alcohol and Toxicology" DPS Training Academy, presenter (03/09/2018, 03/21/2018, 04/25/2018, 11/07/2018) |
| Other | "Training on Evidence Submission, Blood Alcohol and Toxicology" DPS Training Academy, presenter (03/25/2019, 03/27/2019, 09/30/2019, 10/09/2019, 10/16/2019) |
| Other | "Training on Evidence Submission, Blood Alcohol and Toxicology" Game Warden Training, presenter (06/25/2020) |
| Other | "Training on Evidence Submission, Blood Alcohol and Toxicology" Bryan Coalition Speaker (02/20/2020) |
| Other | "Training on Evidence Submission, Blood Alcohol and Toxicology" Terrell Police Department, presenter (09/30/2020) |
| Other | "Training on Evidence Submission, Blood Alcohol and Toxicology" Sunset Valley Police Department, presenter (12/03/2020) |
| Other | "Training on Evidence Submission, Blood Alcohol and Toxicology" DPS Training Academy, presenter (10/29/20, 11/12/20) |
| Presentation | "Introduction to Forensic Toxicology" Dripping Springs High School, presenter (03/21/2017, 03/26/2018, 04/26/19) |
| Presentation | "Toxicology at the DPS Laboratory" presented to the Travis County Medical Examiner Ph.D. Fellows (04/08/2019) |
| Teaching | "Training on Evidence Submission, Blood Alcohol and Toxicology" DRE School, Carrolton, TX, invited presenter (06/13/2018) |
| Teaching | Advanced Trial Advocacy, TDCAA, Waco, TX (July 24-26, 2018); invited to be on the faculty for this workshop |



TEXAS DEPARTMENT OF PUBLIC SAFETY
CRIME LABORATORY
**Statement of Qualifications**
LAB-301 Rev.00a (09/2018) Issued by: SQM

WAC-2004-02444
Page 4 of 5
TxDPS 09.04.2020

**Name:  Baxter, Dana**

**Title:   Forensic Scientist**

<u>Last Update</u>
December 15, 2020

## Training

Enter formal coursework, conferences, workshops, in-service, and any other training received applicable to past and current forensic-related positions.

Legal Disclosure and Professional Responsibility - Texas Forensic Science Commission - Oct 2020 (1 hrs)
Texas Code of Professional Responsibility - Texas Forensic Science Commission - Oct 2020 (1 hrs)
2020 Texas Impaired Driving Forum - Texas  A&M Transportation Institute - Feb 2020 (8 hrs)
National Conference on Highway Safety Priorities - LifeSavers - Mar 2019 (16 hrs)
Texas Statewide Impaired Driving Forum - Texas A&M Transportation Institute - Feb 2019 (8 hrs)
Opioids, Toxicology, and the Law - American College of Medical Toxicology - Dec 2018 (13 hrs)
Posters and Scientific Sessions - Society of Forensic Toxicologists - Oct 2018 (13 hrs)
Pharmacology, Methodologies, and Case Reports for Buprenorphine, - Society of Forensic Toxicologists - Oct 2018 (4 hrs)
Drug Impaired Driving Testimony - Society of Forensic Toxicologists - Oct 2018 (4 hrs)
Effective Communication Skills for Successful Forensic Toxicolog - Society of Forensic Toxicologists - Oct 2018 (4 hrs)
2018 Texas Statewide Impaired Driving Forum - Texas A&M Transportation Institute - Feb 2018 (8 hrs)
Borkenstein Course on the Effects of Drugs on Human Performance - Indiana University, Center for Forensic Science Research & Educa - Oct 2017 (35 hrs)
Alcohol and Drugs of Abuse Affecting the Central Nervous System - Society of Forensic Toxicologists - Aug 2017 (16 hrs)
Toxicology LC/MS Screening - DPS, Toxicology Lab - Mar 2017
Forensic Pharmacology - Center for Forensic Science Research & Education - Dec 2016 (18 hrs)
Posters and Scientific Sessions - Society of Forensic Toxicologists - Oct 2016 (14 hrs)
From the Sample Tube to the Mass Spectrometer - Society of Forensic Toxicologists - Oct 2016 (7 hrs)
Opioids in DUID Investigations - Society of Forensic Toxicologists - Oct 2016 (7 hrs)
Opioids and Pain Management - Forensic Science Education - Aug 2016 (1 hrs)
Toxicology LC/MS Confirmation: Blood THC - DPS, Toxicology Lab - Apr 2016
Drug Recognition Basic Course (audited) - Criminal Justice System, Sam Houston State University - Apr 2015 (30 hrs)
Documentation, Preservation, and Disclosure of Evidence - Dept of Public Safety - Mar 2015 (1 hrs)
Breaking Bad Chromatography Habits - Agilent Technologies - Mar 2015 (4 hrs)
Borkenstein Course on the Effects of Drugs on Human Performance - Indiana University, Center for Forensic Science Research & Educa - Sep 2014 (35 hrs)
Alcohol and Drug Training for Forensic Scientists - Dr. Maury Dennis and Dr. Robert Forney - Aug 2014 (16 hrs)
DUID:  THC and Court - Dr. Sarah Kerrigan - Jul 2014 (4 hrs)
Success Instead of Survival: Courtroom Testimony Techniques - Ron Smith - May 2014 (12 hrs)
Scientific Sessions - Southwestern Association of Toxicologists (Spring meeting) - May 2014 (20 hrs)
Toxicology LC/MS Confirmation - DPS, Toxicology Lab - Apr 2014
Fundamentals of Mass Sectrometry Used in Toxicology - RTI, Forensic Science Education - Dec 2013 (1 hrs)
Toxicology Screening-Immunoassay - DPS, Toxicology Lab - Dec 2013
Introduction to Uncertainty in Forensic Chemistry & Toxicology - RTI, Forensic Science Education - Dec 2013 (3 hrs)
Measurement Uncertainty - Forrest Davis and Will Young - Dec 2013 (1 hrs)
Fundamentals of Chromatography Used in Toxicology - RTI, Forensic Science Education - Dec 2013 (1 hrs)
Fundamentals of Sample Preparation Used in Toxicology - RTI, Forensic Science Education - Sep 2013 (1 hrs)
The Zzzz Drugs:  From Analysis to Interpretation - RTI, Forensic Science Education - Sep 2013 (1 hrs)
Fundamentals of Immunoassay Testing Used in Toxicology - RTI, Forensic Science Education - Sep 2013 (1 hrs)



TEXAS DEPARTMENT OF PUBLIC SAFETY
CRIME LABORATORY
**Statement of Qualifications**
LAB-301 Rev.00a (09/2019) Issued by: SQM

WAC-2004-02444
Page 5 of 5
TxDPS 09.04.2020

**Name: Baxter, Dana**
**Title:  Forensic Scientist**

**Last Update**
December 15, 2020

## Training

Enter formal coursework, conferences, workshops, in-service, and any other training received applicable to past and current forensic-related positions.

Expert Testimony Training for the Prosecutor and Scientist - RTI, Forensic Science Education - Sep 2013 (2 hrs)
How to Be a Good Expert Witness - RTI, Forensic Science Education - Jun 2013 (1 hrs)
Triple Quadrupole System Training Using Analyst Software - ABSciex, Foster City, CA - Feb 2011 (20 hrs)

No further entries.

This document contains sensitive data and its distribution should be limited to those who require it in the performance of their duties. It was generated on January 16, 2021 at  1:05 pm.

# EXHIBIT 3

**DISPOSITION SHEET**

RETURN TO * * *

**LIMESTONE COUNTY SHERIFF'S DEPARTMENT**

| Defendant's Name LAST | FIRST | MIDDLE | RACE | SEX | AGE | DATE OF BIRTH |
|---|---|---|---|---|---|---|
| McClain | Joshua | Timothy | W | M | | 3/1/1985 |

TPWD

| ARREST FILE NUMBER | OFFENSE DATE 3-24-20 | OFFENSE NUMBER 19R301 8336799 | WAR. NO CAPIAS NO. |
|---|---|---|---|

**CHARGES FILED**

D.W.I

PROSECUTOR: (✓) County Attorney  ( ) District Attorney

CAUSE NUMBER

PLEA : ( ) Nolo Contendere  ( ) Not Guilty  ( ) Guilty

TRIAL RESULT: ( ) Not Guilty  ( ) Guilty  ( ) Dismissed

SENTENCED IN:
( ) Justice Court, Pct. _____ Place _____
( ) County Court (at law)  ( ) _____ District Court
Trial Judge:

CHARGES:  (✓) Same as above  ( ) Reduced to

1. _____

**DISPOSITION(S)**   (If more than one, indicate for which charge.)

( )  NO BILLED

( )  CASE PRESENTED PROSECUTION REFUSED

( )  DISMISSED AT TIME OF EXAMINING TRIAL

(✓)  DISMISSED BY STATE'S MOTION

_____ YEAR(S) TDC, HUNTSVILLE AND/OR $ _____ FINE

$ _____ Fine and $ _____ Costs

_____ Day(s) County Jail and $ _____ &

_____ Month(s) County Jail & $ _____ &

_____ Month(s) Probation

_____ Year(s) Probation

_____ Month(s) Probation &  $ _____ &

_____ Month(s) and Sentence Suspended

_____ Year(s) and Sentence Suspended

( ) Concurrent with other  ( ) Consecutive with other

REMARKS: Reject - insufficient evidence to prosecute

| DISPOSITION DATE 4/21/21 | SIGNATURE OF PERSON WRITING DISPOSITION |
|---|---|